UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
              :

SHIRLEY A. DIMPS-HALL,            :
            :

           Plaintiff,      :

            :

    -v-           :

            :

EMPLOYEE BENEFIT PLAN ADMINISTRATION  :
COMMITTEE HSBC—NORTH AMERICA and HSBC-  :
NORTH AMERICA (U.S.) BENEFITS    :
ADMINISTRATIVE COMMITTEE,    :

            :

        Defendants.    :

            :
------------------------------------------------------------------------X

**25-cv-00421 (LJL)**

<u>OPINION AND ORDER</u>

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__2/05/2026__

LEWIS J. LIMAN, United States District Judge:

Defendant Employee Benefit Plan Administration Committee HSBC—North America

("Defendant") moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the

complaint of Plaintiff Shirley A. Dimps-Hall aka Shirley A. Dimps ("Plaintiff") and to strike the

jury demand.  Dkt. No. 12.  That motion is granted in full.

### BACKGROUND

Plaintiff brings this action to recover pension payments that she claims she was owed as

an employee of Manhattan Savings Bank ("MSB") from 2019 to present.  Dkt. No. 27 at 3.[1]

Prior to 1991, retirement benefits for employees of the MSB were paid from and pursuant

to the Retirement Plan of the MSB in Retirement System for Savings Institutions (the "MSB

Plan").  Dkt. No. 14-4 at 2.  Effective May 2, 1990, Republic National Bank of New York

("RNB") acquired MSB and the MSB Plan merged into the Retirement Plan of Republic

National Bank of New York (the "RNB Plan") effective January 1, 1991.  Dkt. No. 14-3

---

[1] Citations to this docket entry use ECF pagination.

§ D-14.15(D). Participants in the MSB Plan who were employed on that date became participants in the RNB Plan and received service credit for vesting and benefit accrual for pre-January 1, 1991 service with MSB. *Id.* On December 31, 1999, RNB merged with HSBC Bank USA, N.A., and the RNB Plan merged into the HSBC Bank USA Pension Plan ("HBUS Plan") effective July 1, 2000. *Id.* § D-14.1(A). All benefits payable under the RNB Plan became payable from the HBUS Plan. *Id.* § D-14.1(B). Finally, sponsorship of the HBUS Plan was transferred to HSBC North America Holdings Inc. ("HSBC"), effective November 9, 2004, and then, effective December 31, 2004, the HBUS Plan was merged into the HSBC-North America (U.S.) Pension Plan (the "Pension Plan"). *Id.* § A-1.1.

Plaintiff's claim in this case is based initially on the MSB Plan. Dkt. No. 14-4. That plan provided that participants would be 100% vested in their retirement benefits accrued to their date of termination as long as they completed at least five years of service after age 18. Dkt. No. 14-1 at 2. Participants were defined as "any Employee or former Employee enrolled in the Plan whose participation in the Plan has not been terminated." *Id.* § 1.29. In turn, "Employee" was defined as "any person who has been compensated in a form other than a pension, retainer or other fee, for an Hour of Service with the Employer and is considered by the Employer to be in its employ." *Id.* § 1.14. Section 5.3 of the MSB Plan, captioned "Ineligible Employees", provided as follows:

> The following classes of Employees are ineligible to participate in the Plan: Employees compensated by the Employer on an "hourly rate" or "contract" basis.

*Id.* § 5.3. The HBUS Plan provides as follows:

> (D) <u>Retirement Plan of Manhattan Savings Bank in RSI Retirement Trust.</u> RNB acquired Manhattan Savings Bank effective May 2, 1990. RNB merged the Retirement Plan of Manhattan Savings Bank in RSI Retirement Trust (the "Manhattan Plan") into the RNB Plan on January 1, 1991. Persons who were participants in the Manhattan Plan on December 31, 1990, and who were Manhattan Savings Bank employees on January 1, 1991 ("MSB Acquired Employees"), if

otherwise eligible to participate in the RNB Plan, become Active Participants in the RNB Plan on January 1, 1991, subject to the following rules: . . .

Dkt. No. 14-3 § D-14.5(D).

Administration of the Plan is allocated to the Administrative Committee. The Administrative Committee has the responsibility and the authority under the Plan of, *inter alia*, "(4) determining the form of and providing any written documents to be used under the Plan, [and] (5) providing a full and fair review of the denial of any claimed benefit under the Plan."

*Id.* § A-11.3(D)(4)–(5). It enjoys discretion to interpret the Plan as follows:

> (B) <u>Plan Interpretation</u>. The Administrative Committee shall interpret the Plan and shall resolve any ambiguities or inconsistences and shall decide all questions arising in the administration, interpretation and application of the Plan. Without limitation, the Administrative Committee shall have full discretionary authority to determine eligibility for benefits and to construe the terms of the Plan. Interpretations under the Plan shall be determined to the best of the ability of the Administrative Committee based on such information as it reasonably available at the time a decision is made. All actions by the Administrative Committee shall be taken pursuant to uniform standards consistently applied to all persons similarly situated.

*Id.* § A-11.3(B). Decisions of the Administrative Committee are deemed to be conclusive and binding. *Id.* § A-11.3(C). And the Administrative Committee has authority to delegate its responsibilities to other persons. *Id.* § A-11.4(B). In administering the Plan, "the Administrative Committee may conclusively rely upon the Corporation's and any Affiliate's payroll and personnel records maintained in the ordinary course of business." *Id.* § A-11.5. As of August 21, 2024, the Administrative Committee delegated to a three-member Claims and Appeals Subcommittee the responsibility to decide claims brought by participants regarding the Plan. Dkt. No. 14-4 at 1.

On December 11, 2023, Plaintiff submitted a Pension Inquiry to the Human Resources Department of Republic National Bank, stating that she was a participant in the Retirement System for Savings Institutions ("RSSI") and that she should have been receiving pension

3

benefits from the year 2019 when she turned 65 years old. Dkt. No. 14-5. Plaintiff asserted that she was a permanent employee from February 1983 to April 1991. *Id.* at 2. She explained that an agency called Contemporary Personnel Service, for whom she worked, placed her at the Manhattan Savings Bank to work as a payroll aide around 1982. *Id.* Around February 1983, MSB hired her to be a permanent employee in the SBLI ("Savings Bank Life Insurance") Unit of the Controllers Department. *Id.* She worked as a permanent employee of MSB from February 1983 to June 1987. *Id.* She was promoted to Senior Bookkeeper in July 1987 and retired in April 1991. *Id.* Plaintiff referenced that in 1984 she completed training to get an insurance agent's licenses for SBLI Insurance and that she passed the Multistate Insurance Licensing Examinations around June 23, 1984. *Id.* She submitted a certificate that she had completed the course to take the examination for insurance agent's licenses in June 1984 and had taken the multistate examination also in June 1984. *Id.* at 16, 18.

On December 21, 2023, a benefits plan specialist from the Human Resources Department responded to Plaintiff's inquiry that she had not been able to locate Plaintiff on the pension system or on the data sheets listing plan benefits. Dkt. No. 14-6. The response stated that it was possible that Plaintiff was not eligible to participate in the MSB plan if she was an hourly employee. *Id.* at 2.

Plaintiff replied on December 27, 2023, that she was hired by MSB to work as a permanent employee in February 1983 and given the RSSI manual. Dkt. No. 14-7 at 2. She stated that she was not an hourly employee after being hired as a permanent employee at MSB and asked why she would be given the manual if she were an hourly employee. *Id.* In response, the benefits specialist gave Plaintiff a Claim Initiation Notice and suggested that she send it to the Benefits Administrative Committee. *Id.* at 1.

On January 8, 2024, Plaintiff submitted a claim initiation notice to the Administrative Committee, repeating her claim that she worked for MSB from February 1983 and received a promotion to Senior Bookkeeper in July 1987, where she worked until April 1991, and therefore was eligible for benefits.  Dkt. No. 14-8 at 3.[2]  She submitted her prior correspondence with the Human Relations Department and queried "My prior employments with the Manhattan Savings Bank from February 1983 to June 1987 was not considered but should have been.  In short, this may be an issue of fraud.  How can nearly 5 years of employment be overlooked by the Banks?"  *Id.*  She submitted a Flex Fund Benefit Confirmation Statement for the plan year beginning January 1, 1991, through December 31, 1991, that reflected a date of hire for Plaintiff of July 20, 1987, *id.* at 54, and a "Summary Plan Description" for the Plan as amended on March 15, 1983, but with a footer that states: "Rev. 9/87," *id.* at 30–31.

Plaintiff was informed by letter on February 15, 2024, from the HSBC Law Department, that her claim had been submitted to the HSBC Benefits Administrative Committee.  Dkt. No. 14-9.  On March 28, 2024, Plaintiff wrote to the Benefits Administrative Committee requesting a response to her claim by April 16, 2024.  Dkt. No. 27 at 56.[3]

On April 16, 2024, Plaintiff's claim was denied.  Dkt. No. 14-10.  The Committee explained that under the RNB plan a participant would be entitled to benefits if the participant had "completed at least 5 RNB Years of Service" and "satisfies the other requirements for eligibility," and that active participants in the MSB plan who were employed by MSB on January 1, 1991 became active participants in the RNB Plan with credit given for "pre-participation RNB Years of Service for vesting and benefit accrual for service with [MSB] before January 1, 1991."

---

[2] Citations to this docket entry use ECF pagination.
[3] Citations to this docket entry use ECF pagination.

*Id.* at 5.  The Committee stated that "HSBC's records, including IRS Employee Census Reports for the Retirement Plan of the Manhattan Savings Bank . . . from 1988, 1989 and 1990, reflect that you were first hired by MSB on July 20, 1987," and thus had not accumulated the requisite five years of vesting service when Plaintiff terminated her employment.  *Id.* at 1, 6.  The committee also pointed to the Flex Fund Benefit Confirmation Statement submitted by Plaintiff which showed a hire date of July 20, 1987.  *Id.* at 6.  The Committee noted that the Plan provided that the Administrative Committee could "conclusively rely upon the Corporation's and any Affiliate's payroll and personnel records maintained in the ordinary course of business."  *Id.* (quoting Plan § A-11.5).  It thus stated that it "reasonably relied on HSBC's records to conclude that because you began working at MSB in 1987 (per HSBC's records), you had fewer than five years of service when you terminated in April 1991 and thus did not become vested in your MSB Plan Benefit."  *Id.*  The Committee discounted the evidence submitted by Plaintiff.  The information about insurance license training did not prove Plaintiff's date of hire as a permanent employee by MSB (as opposed to, e.g., a staffing agency employee).  *Id.*  The fact that Plaintiff was in possession of a document from 1983 did not prove her employment in 1983 particularly when the footer on that document suggested it was from 1987.  *Id.*  The denial letter informed Plaintiff of her right to appeal.  *Id.* at 7.

On June 8, 2024, Plaintiff wrote to the Administrative Committee and requested an appeal.  Dkt. No. 27 at 71.  Plaintiff maintained her claim that July 20, 1987 was the date on which she was promoted to Senior Bookkeeper and that she began working at MSB as a full-time employee before that date.  *Id.*  She submitted records that she asserted supported her claim to have begun working at MSB at least as early as 1986.  *Id.* at 72.  She asked for transaction records between Contemporary Personnel Services and MSB as well as her personnel folder and

6

other records to substantiate dates prior to 1986. *Id.* at 72–73. One of the documents she submitted was a 1981 document setting forth that payroll aide employees were paid straight time up to 40 hours and time and a half after 40 hours as well as documents establishing that she was paid $8.10 effective February 27, 1987, and that her salary was increased to $17,750 effective November 2, 1987. *Id.* at 74–75.

By letter of August 21, 2024, Defendant, through its Benefits Administrative Committee, denied Plaintiff's appeal. Dkt. No. 14-4. The denial letter stated:

> Although you present circumstantial evidence that it is possible you may have been hired by MSB prior to July 20, 1987, you do not present any definitive proof that you had the required five years of service to have become vested in your MSB Plan Benefit by the time you terminated employment in April 1991, or that you met the other conditions required to qualify for benefits under the MSB Plan. For example, the pay increase card that you present from February 17, 1987 does suggest you may have been working directly for MSB prior to July 20, 1987. However, this does not prove that you were working directly for MSB, nor that you had sufficient service to vest in your MSB Plan Benefit. Similarly, the fact that you requested vacation in March 1987 could suggest that you had already been employed by MSB for at least a year at that point, per the memo you attached stating that payroll aides must be with MSB for a year before taking vacation. However, we do not know whether this vacation was granted or whether MSB would have included time assigned at MSB through a staffing agency into the year of employment calculation. In any case, these documents do not show that you were eligible to participate in the MSB Plan or whether you met other eligibility criteria (e.g., whether you were an hourly employee—as your earliest pay increase card reflecting an increase to $8.10 suggests—and thus ineligible to participate, or a salaried employee (as your later pay increase cards suggest)).
>
> As noted in the Claims Denial, you are welcome to request an itemized, non-certified statement of earnings from the Social Security Administration to demonstrate your actual dates of service and earnings with MSB/RNB. However, even if you were able to provide such evidence, it would still be possible that you were ineligible to participate in the MSB Plan if, for example, you were employed as an hourly, as opposed to salaried, employee.

Dkt. No. 14-4 at 7–8.

## PROCEDURAL HISTORY

Plaintiff initiated this action by complaint filed on January 15, 2025. Dkt. No. 1.

Defendant filed this motion on March 28, 2025.  Dkt. No. 23.  It also submitted a memorandum of law in support of the motion and the declaration of Elaine Liu.  Dkt. Nos. 13–14.  On April 23, 2025, Plaintiff filed a memorandum of law in opposition to the motion to dismiss.  Dkt. No. 27.  On May 23, 2025, Plaintiff filed a supplemental memorandum of law in opposition to Defendant's motion to dismiss.  Dkt. No. 39.  On June 6, 2025, Defendant filed a reply memorandum of law in further support of its motion to dismiss.  Dkt. No. 40.

The Court has stayed discovery pending a decision on the motion to dismiss.  Dkt. No. 26.

## STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement."  *Twombly*, 550 U.S. at 555, 557.  The ultimate question is whether "[a] claim has facial plausibility, [*i.e.*,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]."  *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

8

The Court construes *pro se* pleadings broadly and liberally, interpreting them so as to raise the strongest arguments they suggest. *See Abbas v. Dixon*, 40 F.3d 636, 639 (2d Cir. 2007); *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000). However, while the Court construes *pro se* pleadings liberally, *pro se* plaintiffs are not relieved of the requirement that they plead enough facts to "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Nor does it relieve them of the obligation to otherwise comply with the pleading standards set forth by the Federal Rules of Civil Procedure. *See Saidin v. N.Y.C. Dep't of Educ.*, 498 F. Supp. 2d 683, 687 (S.D.N.Y. 2007). "Thus, the Court's 'duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it.'" *Davila v. Lang*, 343 F. Supp. 3d 254, 266 (S.D.N.Y. Oct. 23, 2018) (quoting *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009)).

In deciding a motion under Rule 12(b)(6), the Court may consider not only the complaint but also "documents that are attached to the complaint, incorporated in it by reference, integral to the complaint, or subject to judicial notice." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). That includes the text of the pension plan, summary plan descriptions, and the written denial of Plaintiff's claim, all of which Plaintiff references and upon which her claims depend. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). However, denial-of-benefits claims under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, are generally limited to the administrative record, unless the district court finds "good cause to consider additional evidence." *Flowers v. Hartford Life & Accident Ins. Co.*, 2021 WL 6066019, at *1 (S.D.N.Y. Nov. 18, 2021) (quoting *Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 125 (2d Cir. 2003)).

**DISCUSSION**

**I.       Claim for Benefits—ERISA § 502(a)(1)(B)**

ERISA § 502(a)(1)(B) provides that a participant or beneficiary may bring a civil action "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  The merits of such a claim turn "on the interpretation of terms in the plan at issue."  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see Feifer v. Prudential Ins. Co. of Am.*, 306 F.3d 1202, 1210 (2d Cir. 2002); *accord Devlin v. Empire Blue Cross & Blue Shield,* 274 F.3d 76, 82 (2d Cir. 2001).  To state a claim, a plaintiff must allege (1) that the plan is covered by ERISA; (2) that she is a "participant" or "beneficiary" of the plan; and (3) that she was "wrongfully denied" benefits under the terms of the plan.  *See Doe v. Oxford Health Plans (NY), Inc.*, 2025 WL 1105287, at *4 (S.D.N.Y. Apr. 14, 2025) (quoting *Giordano v. Thomson*, 564 F.3d 163, 168 (2d Cir. 2009)); *see also Schultz v. Joint Indus. Bd. Inc.*, 2025 WL 1474306, at *7 (E.D.N.Y. Feb. 27, 2025); *Bulovic v. Both*, 14 F. Supp. 3d 365, 390 (S.D.N.Y. 2014); *Guerrero v. FJC Sec. Servs. Inc.*, 423 Fed. App'x. 14, 16 (2d Cir. 2011) (summary order).

Where, as here, the plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the administrator's decision is reviewed under the arbitrary and capricious standard.  *Firestone*, 489 U.S. at 115. Where a plan confers such discretion, the administrator's decision may not be disturbed if reasonable.  *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995); *see also Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 83–84 (2d Cir. 2009).  A decision is arbitrary and capricious only if it is "without reason, unsupported by substantial evidence or erroneous as a matter of

10

law." *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 249 (2d Cir. 1999) (quotation omitted).

A plaintiff challenging a discretionary benefits determination must therefore do more than allege that she is entitled to benefits.  She must plausibly allege that the administrator's denial was arbitrary and capricious—i.e., that no reasonable plan fiduciary, applying the plan's terms, could have reached the decision that was made.  *See, e.g.*, *Giordano*, 564 F.3d at 168; *Bayonne v. Pitney Bowes, Inc.*, 161 Fed. App'x 144, 145–46 (2d Cir. 2006) (summary order).

### A.    The Committee's Discretion and Its Right to Rely on the Bank's Records

The MSB Plan documents in the record grant the Administrative Committee "full discretionary authority to determine eligibility for benefits and to construe the terms of the Plan," and provide that the Committee's determinations "shall be conclusive and binding."  Dkt. No. 14-3 § A-11.3(C).  They further provide that, in administering the plan, the Committee "may conclusively rely upon the Corporation's and any Affiliate's payroll and personnel records maintained in the ordinary course of business."  *Id*. § A-11.5.

Those provisions perform two related functions.  First, they assign to the Committee— not to the courts and or to individual participants—the responsibility and authority to make eligibility determinations and to interpret the Plan.  *See Firestone*, 489 U.S. at 111.  Second, they specify the evidentiary baseline for those determinations: the employer's own payroll and personnel records, maintained in the ordinary course of business.

Such provisions are common in ERISA plans and serve important purposes.  Pension plans are long-term, group arrangements.  They promise benefits decades into the future and must be administered consistently for thousands of employees and former employees.  If each benefits decision required a *de novo* investigation into the participant's work history—including individualized document searches, witness interviews, and discovery—it would be difficult, as a

practical matter, to operate a plan at all.  Costs would increase, delays would multiply, and similarly situated employees could be treated differently depending on what extraneous materials happened to be located in their individual files.  *See Conkright v. Frommert*, 559 U.S. 506, 517 (2010) (explaining that *Firestone* deference promotes efficiency and predictability, and serves the interests of uniformity by avoiding a patchwork of differing interpretations that would introduce "considerable inefficiencies in benefit program operation.").

By allowing the Committee to rely on the employer's payroll and personnel systems as the authoritative record of service, the Plan promotes uniformity, predictability, and efficiency. Those features, in turn, protect all participants as a group.  They help ensure that benefits are calculated according to the same rules for everyone, that the Plan can be funded and administered at a reasonable cost, and that assets are reserved for the benefits promised under the Plan rather than spent on repeated reconstruction of decades-old employment histories whenever a dispute arises.  Courts have recognized that in administering long-term, group plans, fiduciaries must be able to adopt uniform administrative practices and apply eligibility rules consistently across thousands of participants.  *See id.* (noting that deference to plan administrators promotes efficiency, predictability, and uniformity).

Thus, where the Plan has granted such discretion and such a right of reliance, a participant who challenges a benefits denial must plausibly allege that the Committee misused that authority—for example, by ignoring credible contrary evidence in the records, applying the wrong plan provisions, or otherwise acting without a reasonable basis.  *See Pagan*, 52 F.3d at 442.  It is not enough to allege that other records might exist somewhere, or that further searching might yield a different picture.

### B.    Plaintiff's Failure to Plead Arbitrary and Capricious Conduct

Measured against those standards, Plaintiff's complaint does not state a claim under § 502(a)(1)(B).

Plaintiff alleges that she worked for MSB from 1983 until 1991 and that, if that work were fully credited, she would have more than five years of service and thus a vested benefit under the MSB Retirement Plan as amended and restated in 1985. She further alleges that the Committee's denial of benefits rested on "incomplete" or "redacted" records, and that certain historical documents from the 1980s and early 1990s were not located.

What Plaintiff does not allege, however, is that the Committee's decision was arbitrary and capricious, as required by ERISA when the Plan confers discretion. The complaint does not assert that the Committee acted without reason, ignored evidence that was before it, applied the wrong plan, or otherwise abused its discretion. *Cf. O'Shea v. First Manhattan Co. Thrift Plan & Trust*, 55 F.3d 109, 112 (2d Cir.1995) (denial is arbitrary and capricious where plan administrators "impose a standard not required by the plan's provisions, or interpret the plan in a manner inconsistent with its plain words" (citation and internal quotation marks omitted)); *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 83 (2d Cir. 2009) (courts "may overturn an administrator's decision to deny ERISA benefits only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law" (internal quotation marks and citations omitted)). To the contrary, Plaintiff's own submissions acknowledge that the Committee based its decision on the Bank's payroll and personnel records and on the administrative materials compiled in the course of her claim and appeal. The fact that Plaintiff believes those records to be incomplete, or believes that other documents might exist that would support her view of her employment history, does not by itself render the Committee's decision arbitrary and capricious, particularly where the Plan expressly permits the Committee to "conclusively rely" on those

records.  *Cf. Mack*, 2017 WL 6375786, at *6–7 (affirming denial where plan administrator relied on company records).  Under the Plan's terms, the Committee was entitled to treat the Bank's payroll and personnel systems as the authoritative evidence of service, absent a showing that reliance on those records was itself unreasonable.

### C.    Discovery, Scope of Review, and Missing Records

Plaintiff argues that the Court should not resolve the motion to dismiss without requiring Defendant to produce additional documents and without permitting her to conduct discovery into MSB's 1980s and early-1990s payroll and personnel records.  She contends that, if she were afforded such discovery, she could "prove" that she has more than five years of service and is therefore vested.  That contention does not rescue Plaintiff's complaint that fails to state a claim.

Whether review is *de novo* or under the arbitrary-and-capricious standard, "district courts typically limit their review to the administrative record before the plan at the time it denied the claim," and may look beyond that record only upon a showing of "good cause."  *Halo v. Yale Health Plan*, 819 F.3d 42, 60 (2d Cir. 2016); *see also DeFelice v. Am. Int'l Life Assur. Co. of N.Y.*, 112 F.3d 61, 66 (2d Cir. 1997); *Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 125 (2d Cir. 2003); *Locher v. Unum Life Ins. Co. of Am.*, 389 F.3d 288, 294–96 (2d Cir. 2004) (conflict of interest, without more, does not itself constitute good cause).  Good cause is typically found where procedural defects or other case-specific irregularities have "adversely affected the development of the administrative record."  *Halo*, 819 F.3d at 60.

Consistent with those principles, courts in this Circuit often reject requests for broad discovery in ERISA cases absent non-speculative, case-specific allegations that would satisfy the good-cause standard.  *See, e.g., Aitken v. Aetna Life Ins. Co.*, 2017 WL 455547, at *3–4 (S.D.N.Y. Jan. 19, 2017) (explaining that generally discovery is limited to the actual evidence that was before the claims administrator when the decision was made, and holding that, "unless it

14

is shown that there is a reasonable chance that the requested discovery will satisfy the good-cause requirement, a plaintiff is limited to the administrative record"); *Lane v. The Hartford*, 2006 WL 3292463, at *2 (S.D.N.Y. 2006) (denying request for limited discovery where plaintiff only broadly asserted that discovery is "needed to determine whether she received a 'full and fair review'").

Plaintiff's submissions do not meet that standard. She does not allege that the Committee failed to follow the Plan's claims procedures, that it refused to consider materials she submitted in her administrative appeal, or that there were other procedural defects that could have prevented the development of a complete administrative record. Indeed, the correspondence between Plaintiff and the Committee reflects that, after initially denying her claim, the Committee invited Plaintiff to submit any additional documents she believed relevant and specifically suggested that she might seek earnings records from the Social Security Administration if she believed those records would support her claim. Dkt. No. 14-4 at 430. Her principal complaint is instead that certain historical documents from the 1980s and early 1990s were not located, and that additional "missing" or "redacted" records might exist somewhere and could support her recollection of her employment history. *See Locher*, 389 F.3d at 294–96; *Aitken*, 2017 WL 455547, at *3–4.

As discussed above, moreover, the Plan expressly permits the Administrative Committee to "conclusively rely upon" the Bank's payroll and personnel records maintained in the ordinary course in determining eligibility for benefits. Dkt. No. 14-3 § A-11.5. Accordingly, even if there existed documents in the bowels of the bank that would tend to show that Plaintiff was a full-time, salaried employee prior to 1987, that would not make the Committee's decision arbitrary and capricious.

15

Even liberally construing the complaint and the *pro se* opposition, Plaintiff has not stated a claim for benefits under § 502(a)(1)(B).  *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (per curiam) (courts must construe *pro se* submissions liberally but that "does not exempt a party from compliance with relevant rules of procedural and substantive law" (internal quotation marks and citation omitted)).

## II.    Remaining ERISA Theories

Plaintiff's remaining theories—for disclosure and penalties, fiduciary breach, and discovery—each depend, in one way or another, on her premise that the Committee's denial of benefits was wrongful.  Because she has not plausibly alleged that the Committee abused its discretion, those claims fail as a matter of law.

### A.    Disclosure, Reporting, and Penalties—29 U.S.C. §§ 1024, 1025, 1032

The disclosure and reporting provisions that Plaintiff invokes, as well as the statutory penalty provision in § 502(c), protect "participants" and "beneficiaries."  Dkt. No. 27 at 18; *see* 29 U.S.C. §§ 1024(b), 1025(a), 1132(c).  A former employee is a "participant" only if she has "a reasonable expectation of returning to covered employment" or "a colorable claim to vested benefits."  *Firestone*, 489 U.S. at 117–18 (1989) (adopting definition from Second Circuit); *Saladino v. I.L.G.W.U. Nat'l Ret. Fund*, 754 F.2d 473, 476–77 (2d Cir. 1985) (former employee without colorable vesting claim is not a "participant" and cannot invoke ERISA disclosure rights).

Because, for the reasons already explained, Plaintiff has not stated a colorable claim to vested benefits, she does not qualify as a "participant" and cannot maintain claims for disclosure violations or statutory penalties.  *See Saladino*, 754 F.2d at 476–77 (holding that former employees without colorable vesting claims are not entitled to plan information).  Even if she were a participant, the correspondence attached to the pleadings shows that the Plan

16

administrator responded to her inquiries, explained the basis for its eligibility determination, and provided or identified the relevant plan materials.  Her allegations thus do not state a claim for discretionary penalties under § 502(c)(1).  *See* 29 U.S.C. § 1132(c)(1)(B) (penalties may be imposed only where administrator "fails or refuses" to comply with written request for information within 30 days).

### B.  Fiduciary-Duty Theories – ERISA §§ 404, 409, and § 502(a)(2)–(3)

Plaintiff also describes the Committee's decision as a breach of fiduciary duty.  ERISA § 502(a)(2) permits suit on behalf of the plan to redress plan-wide losses; it does not authorize recovery of individualized benefits.  *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140–44 (1985); *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 254–56 (2008).  Plaintiff here seeks a personal pension, not plan-wide relief, and thus fails to state a claim under § 502(a)(2).

To the extent Plaintiff invokes § 502(a)(3), that provision authorizes "appropriate equitable relief" only where no other ERISA remedy is adequate.  *Varity Corp. v. Howe*, 516 U.S. 489, 512–15 (1996) (describing § 502(a)(3) as a "catchall" and "safety net").  A plaintiff may not "repackage" a benefits dispute as a fiduciary-breach claim to obtain the same relief under § 502(a)(3).  *See Frommert v. Conkright*, 433 F.3d 254, 269–70 (2d Cir. 2006) (rejecting § 502(a)(3) claims where relief sought "falls comfortably within the scope of" their claims for benefits), *vacated on other grounds*, 559 U.S. 506 (2010); *N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 134–35 (2d Cir. 2015).

Plaintiff's fiduciary-duty allegations—that the Committee relied on the Bank's payroll and personnel records, did not credit her asserted pre-1987 service, and denied her pension— serve as another way of challenging the same benefits decision.  They do not identify a distinct fiduciary wrong or a distinct injury, and they seek the same relief: payment of a pension.  Because § 502(a)(1)(B) provided an adequate vehicle for challenging the denial (and that claim

17

fails for failure to plead arbitrary and capricious conduct), § 502(a)(3) is unavailable. *See Varity*, 516 U.S. at 515; *Frommert*, 433 F.3d at 270–71.

### C.    Regulatory Allegations—29 C.F.R. §§ 2520.107-1, 2560.503-1

To the extent Plaintiff seeks to assert independent causes of action for violations of Department of Labor regulations, such as 29 C.F.R. §§ 2520.107-1 (record retention) and 2560.503-1 (claims-procedure requirements), those claims are not cognizable. ERISA's civil-enforcement scheme is set out in § 502, and courts generally may not infer additional private rights of action directly from regulations. *See Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001); *Astra USA, Inc. v. Santa Clara Cnty.*, 563 U.S. 110, 117–20 (2011). Alleged noncompliance with claims-procedure regulations may affect the standard of review in an otherwise viable § 502(a)(1)(B) action, *see Halo*, 819 F.3d at 56–58, but, as explained above, Plaintiff has not stated such a claim.

### I.    Jury Demand

Finally, Defendant moves to strike Plaintiff's jury demand. That motion is granted.

The Second Circuit has long held that there is no right to a jury trial in actions seeking benefits under ERISA § 502(a)(1)(B). *See DeFelice*, 112 F.3d at 64. Those cases explain that actions for recovery of benefits under ERISA are equitable in nature, and thus no right to a jury trial attaches to such claims. *DeFelice*, 112 F.3d at 64; *see also O'Hara v. Nat'l Union Fire Ins. Co.*, 642 F.3d 110, 116 (2d Cir. 2011) ("[T]here is no right to a jury trial in a suit brought to recover ERISA benefits[.]"). Because all of Plaintiff's claims arise under ERISA and seek relief that is equitable in nature, her jury demand is stricken.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.  The complaint is dismissed with prejudice.[4]  Defendant's motion to strike Plaintiff's jury demand is also GRANTED.  Plaintiff's requests for additional discovery and document production are DENIED.  The Clerk of Court is respectfully directed to terminate the motion at Dkt. No. 12 and to close this case.

    SO ORDERED.

Dated: February 5, 2026
    New York, New York                      LEWIS J. LIMAN
                                      United States District Judge

---

[4] Ordinarily, a court will grant a *pro se* plaintiff leave to amend at least once.  *See, e.g., Triestman*, 470 F.3d at 474–75 (2d Cir. 2006) (per curiam).  But leave to amend may be denied as futile where the problems with the complaint are "substantive" and "better pleading will not cure" them, even in a *pro se* case.  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (affirming denial of leave to replead where repleading would be futile).  Here, Plaintiff's claims fail as a matter of law: the Plan grants the Administrative Committee discretionary authority; Plaintiff has not alleged facts that, if true, would render the Committee's denial of benefits arbitrary and capricious; and the additional discovery she requests—principally, further searches for historical employment records—would not alter the governing standard of review or cure that deficiency.  Under these circumstances, granting further leave to amend would be futile, and the Court therefore dismisses the complaint with prejudice.

19